Carrie Hempel; State Bar No. 126713
Community and Economic Development Clinic
UCI School of Law
401 E. Peltason Dr., Suite 1000
Irvine, CA 92697
Telephone: (949) 824-0975
Attorneys for Interested Party Capistrano Terrance
Organization, Inc.

FILED

FEB - 1 2016

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

In re

CAPISTRANO TERRACE LTD., a
California limited partnership,

Reorganized Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 8-11-bk-19767-MW

(Chapter 11)     By fax

RESPONSE OF CAPISTRANO
TERRACE ORGANIZATION TO
HOMEOWNERS ASSOCIATIONS'
REQUEST TO RETAIN LIMITED
JURISDICTION OVER DISPUTES
BETWEEN RESIDENTS AND HOA AND
RESIDENT OWNED PARKS (KD. NO.
458).

DATE:      February 3, 2016
TIME:      9:00 a.m.
PLACE:     CTRM 6C

TO THE HONORABLE MARK. S. WALLACE, UNITED STATES BANKRUPTCY
JUDGE, THE REORGANIZED DEBTOR, THE OFFICE OF THE UNITED STATES
TRUSTEE AND OTHER PARTIES-IN-INTEREST:

I.     INTRODUCTION AND STATEMENT OF FACTS

Capistrano Terrace Organization ("CTO") provides the following response to the
Capistrano Terrace Mobilehome Owners Association, Inc. ("HOA") request to retain
limited jurisdiction over disputes between residents and HOA and Resident Owned Parks

1

("ROP") (docket #458). CTO is a non-profit organization that was formed by the residents of Capistrano Terrace Mobile Home Park ("the Park") for the purpose of owning the park on the residents' behalf. Every resident of the Park is a member of CTO, and CTO's bylaws require board members to be park residents.

In 2011, the Official Committee of Unsecured Creditors ("Committee") (also commonly referred to at that time as the Official Committee of Park Residents of Capistrano Terrace Mobile Home Park, see DEBTOR'S SECOND AMENDED CHAPTER 11 PLAN OR REORGANIZATION (AS MODIFIED) ¶ 23 Docket #315, filed a motion with this Court to employ ROP as its agent to procure financing for the purchase and sale of the park to the residents. Docket #71. It was the intent of the Committee that "[t]he residents and tenants [would] form a new tax exempt entity to acquire the Park Property from [Resident Owned Parks Capistrano Terrace, Inc. ("ROPCT"), a wholly owned subsidiary of ROP,] while using ROP to manage the park Property." PARTIAL JOINDER OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CAPISTRANO TERRACE, LTD IN DEBTOR'S MOTION FOR ORDER TO ENTER INTO, AND APPROVING, PLAN TERM SHEET AND DEEMING CONSENT TO THE PLAN TERMS SHEET AS AN AFFIRMATIVE VOTE IN FAVOR OF THE PLAN AND DECLARATION AS PART THEREOF ¶ 9 (Docket #227). In 2012, ROPCT and HOA entered into a contract whereby ROPCT agreed to sell the Park to a tax-exempt entity. To effectuate the terms of this agreement, ROP contacted the Community and Economic Development clinic at the University of California Irvine School of Law ("UCI") to work with ROP and the residents in the formation of the tax exempt entity. The HOA retained UCI for this purpose and, pursuant to an HOA board resolution, CTO was formed to be that legal entity. CTO's board of directors subsequently retained UCI to serve as its general counsel.

2

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

In February 2014, HOA assigned all of its rights to purchase the park to CTO. Since then, ROP has worked to obtain permanent financing for the Park on behalf of CTO. CTO, by UCI, and ROP and ROPCT, by their attorneys, were scheduled to mediate on February 10, 2016 to address remaining issues related to ROPCT's ownership and CTO's purchase of the Park. The mediation has been postponed due to the pendency of the HOA's Motion to this Court.

HOA does not have standing to raise these issues. CTO is the appropriate organization to address the ongoing concerns about the Park because it has been assigned the right to own the Park once financing is obtained, and because CTO represents every single resident in the Park. Only a small portion of the Park's residents are members of the HOA, and the HOA relinquished any rights to park ownership when it assigned the rights to CTO.

## II.    THE COURT HAS BROAD DISCRETION TO DETERMINE WHETHER TO EXERCISE JURISDICTION OVER THE PRESENT MATTER

This Court has broad discretion to determine whether to exercise jurisdiction to resolve conflicts among CTO, HOA, ROP, and ROPCT. Under 11 U.S.C. § 1142, this Court may direct the debtor and "any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142. The scope of Section 1142(b) is considerably broader than merely ministerial acts, such as termination or creation of liens. However, courts should refrain from issuing orders directing third parties to take action unless the action is directly called for by the terms of the plan or is necessary to allow the plan to be implemented. In re Modern Steel Treating Co., 130 B.R. 60 (Bankr. N.D. Ill. 1991). See In re Erie Hilton Joint Venture, 137 B.R. 165 (Bankr. W.D.

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

1    Pa. 1992) (directing an investor to advance funds necessary to consummate the plan from

2    an entity committed to advance the funds); see also In re Harlow Props., Inc., 56 B.R. 794

3    (B.A.P. 9th Cir. 1985) (ordering the officers of a corporate debtor to execute documents

4    necessary for sale of the corporate assets); In re Goldblatt Bros., Inc., 132 B.R. 736

5

6    (Bankr. N.D. Ill. 1991) (directing a creditor's committee to employ a firm experienced in

7    searching for missing creditors to find creditors entitled to plan repayments); In re

8    Cinderella Clothing Indus., Inc., 93 B.R. 373 (Bankr. E.D. Pa. 1988) (ordering principals of

9    the debtor to submit to examination under the Bankruptcy Rule 2004 to determine the

10   extent to which they have acted in conformance with the plan). None of these situations is

11   present here. ROP has satisfied the obligations of the bankruptcy plan. The disputes

12

13   existing now are (1) a management issue between ROPCT and CTO, and (2) the HOA's

14   unsubstantiated claim that CTO cannot be the resident-controlled non-profit entity that

15   purchases the park.

16       Furthermore, underpinning Section 1142(b) is the Court's jurisdiction over the

17   contested issues. In order for a "necessary party" to be bound by this Court, the Court

18   must have jurisdiction over the proceedings arising *under* title 11 or *arising in* or *related to*

19

20   cases under title 11. 28 U.S.C. § 1334(b) (emphasis added). Arising under or arising in

21   are terms of art: "'arising under' title 11 involve causes of action created or determined by

22   a statutory provision of that title . . . [and] proceedings 'arising in' title 11 are not those

23   created or determined by the bankruptcy code, but which would have no existence outside

24   of a bankruptcy case. In re Wilshire Courtyard, 729 F.3d 1279, 1285 (9th Cir. 2013). Here,

25   the HOA's claims against CTO and ROP are not causes of action resulting from statutory

26

27   provisions of title 11 and further, are not created by a bankruptcy case and have no

28   existence elsewhere. Rather, CTO's claims are state law claims outside this Court's

4

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION
OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

1    jurisdiction under the "arising under" and "arising in" standard.

2    Alternatively, in determining whether a matter is "related to" a case under title 11,

3    the Ninth Circuit examines whether there is a "close nexus" between a post-confirmation

4    matter and the bankruptcy proceeding. In re Wilshire Courtyard, 729 F.3d at 1289. A close

5    nexus exists when the post-confirmation matter "affect[s] the interpretation,

6    implementation, consummation, execution, or administration of the confirmed

7    plan." Id. (quoting Pegasus Gold Corp., 394 F.3d, 1189, 1194 (9th Cir. 2005)). This test

8    "recognizes the limited nature of post-confirmation jurisdiction" but there is a "certain

9    flexibility" dependent on case-by-case facts. Id. In In Re Wilshire Courtyard, the Ninth

10   Circuit found that the Bankruptcy Court had broad jurisdiction because state law claims

11   and federal claims both involved interpreting the confirmation plan. Id. at 1292.

12   Conversely, in In re Nobel Group, Inc., there was a retention-of-jurisdiction provision of a

13   confirmed plan that indicated the parties agreed to resolve a state law contract dispute in

14   bankruptcy court. 529 B.R. 284, 286–87 (N.D. Cal. 2015). However, the provision was

15   insufficient to create jurisdiction even though, by resulting in recovery of additional funds

16   from the bank, it might affect recovery to creditors. Id. at 292. The court says that subject

17   matter jurisdiction cannot be "conferred by consent," but that bankruptcy courts can only

18   act in proceedings within their jurisdiction. Id. at 291 (quoting In re Resorts Int'l, Inc., 372

19   F.3d. 154, 165 (3d. Cir. 2004). Here, similarly, the court would need to find underlying

20   jurisdiction beyond the consent of parties. To do so, this Court would have to justify

21   continued jurisdiction based on a "close nexus," fact-specific analysis.

## III.    IF THE COURT EXECISES JURISDICTION, THE HOA'S MOTION SHOULD BE REFILED TO SATISFY LOCAL COURT RULES

The HOA's Request to Retain Limited Jurisdiction does not satisfy local court rules.

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

If this Court decides to exercise jurisdiction, the Motion should be refiled. Under Local Rule 9013-1(d)(2), a "notice of motion and motion must be filed and served not later than 21 days before the hearing date designated in the notice" with few exceptions, none of which apply here. Local Rule 9013-1(d)(2). Here, HOA's Request to Retain Limited Jurisdiction was filed with this Court only fourteen days (14) before the hearing date, on January 20, 2016. Further, although the HOA's request alleges claims against CTO, and although the HOA is aware that CTO is represented by UCI, UCI and CTO were not served notice of the filing, receiving it instead from Park residents and the HOA on January 22, 2016, less than two weeks before the hearing. Additionally, HOA failed to serve notice of the motion to ROP and ROPCT despite the fact that it alleges claims against these organizations. Finally, the HOA has neglected to follow this Court's local rules by failing to provide sufficient notice. Therefore, if this Court exercises jurisdiction, it should require that HOA refile its request in accordance with local rules and provide notice to all involved parties in order to allow adequate time for responses to the HOA's numerous allegations.

**IV.    TO THE EXTENT THAT THE COURT AGREES TO EXERCISE JURISDICTION AND THE FILING SATISFIES LOCAL COURT RULES, THE COURT SHOULD LIMIIT THE CLAIMS TO THOSE CONCERNING ROP'S ROLE AS AN AGENT IN SECURING FINANCING OF THE PARK AND ROPCT'S OWNERSHIP OF THE PARK.**

If this Court agrees to exercise jurisdiction, the claims should be limited to those that stem from the bankruptcy proceedings. The Court has jurisdiction to hear the claims that are within the close nexus of the bankruptcy proceeding. If they are within close nexus of the proceeding, then the Court may take actions that satisfy the jurisdiction requirement of 28 U.S.C. § 1334(b) and in accordance with discretion in 11 U.S.C. § 1142. This Court

6

should limit its jurisdiction to claims regarding ROP's role as an agent in securing financing for purchasing the Park, and claims related to ROPCT's ownership of the Park.

## V.    IF THE COURT EXERCISES JURISDICTION, CTO IS THE SOLE PARTY WITH STANDING TO PURSUE CLAIMS AGAINST ROP AND ROPCT.

The HOA assigned all of its rights to purchase the park to CTO. Therefore, CTO is the only party with standing to pursue claims against ROP and ROPCT concerning the purchase of the Park. The assignment was necessary to proceed with the HOA's contract with ROPCT requiring a tax-exempt entity to purchase the park and the Committee's ultimate goal of a resident-controlled tax-exempt entity owning the park. CTO's membership and board of directors are comprised solely of park residents, contrary to the HOA's unsubstantiated claim that CTO is somehow an ROP directed and controlled corporation. Here, the assignment was made on February 12, 2014. See "Exhibit A."

There is ample evidence to support the fact that it was the residents' and the HOA's intent to transfer the rights to purchase the Park over to CTO. First, the Sales Contract between ROPCT and HOA provided that the Park would go to a "tax-exempt nonprofit." "Exhibit B." The HOA decided to create a new entity, CTO. Solomon Decl. at ¶ 7, Feb. 1, 2016. Thereafter, HOA minutes and newsletters frequently showed support for CTO becoming the new owner of the Park. As early as October 2013, the HOA newsletter spoke of "our new entity: CTO, Inc.: Capistrano Terrace Organization, Incorporated!" "Exhibit C." Subsequent HOA newsletters demonstrated the HOA's endorsement of CTO as well. The December 2013 HOA newsletter stated "[s]ome good news about our progress toward nonprofit status. As of October 28, 2013, Capistrano Terrace Organization, Inc., is officially a California corporation. We submitted our articles of incorporation with the state of California and they have recognized us as CTO, Inc.!" "Exhibit D." The January 2014

7

newsletter announced the HOA's Quarterly Membership Meeting where there would be important updates on "[UCI's] proposed bylaws for our new association." "Exhibit E." The February newsletter mentioned some changes that could occur "after CTO becomes the owner." "Exhibit F." Additionally, a majority of residents present at the August 27, 2014, CTO meeting approved the Mobilehome Park Resident Ownership Program (MPROP) loan to CTO. Priest Decl. Ex. C, Jan. 27, 2015, Doc 463. It is therefore apparent that the February 2014 assignment reflected the HOA's intent that CTO become the new owner of the Park.

Therefore, if this Court were to find jurisdiction, it should recognize CTO as the only party to pursue any and all claims against ROP and ROPCT.

## VI.    CONCLUSION

In conclusion, this Court has broad discretion whether to exercise jurisdiction in the present case. However, if the Court does exercise jurisdiction, HOA's Motion should be refiled to satisfy local court rules and allow all parties sufficient time to respond before a hearing with this Court.

DATED: February 1, 2016

UCI School of Law, Community and Economic Development Clinic

By: _Carrie Hempel_

Carrie Hempel, Esq.
Attorney for Interested Party the Capistrano Terrance Organization, Inc.

8

# Declaration by Robert Solomon, Esq.

# DECLARATION OF ROBERT SOLOMON

I, Robert Solomon, declare:

1.      I am an attorney duly licensed to practice in the State of California, California Bar Number 280022. I entered into a retainer agreement with Capistrano Terrace Organization ("CTO") and the Capistrano Terrace Mobilehome Owners Association ("HOA") to represent both organizations in legal matters pertaining to Capistrano Terrace Mobilehome Park (the "Park"). Although my representation of CTO is ongoing, my representation of the HOA was terminated on January 22, 2016.

2.      I am the Co-Director of the Community and Economic Development Clinic at UC Irvine School of Law ("UCI") along with Carrie Hempel.

3.      The following facts are within my personal knowledge, and I could competently testify thereto if called as a witness.

4.      Following the confirmation of the Chapter 11 Plan in this case, ROP Capistrano Terrace Inc. ("ROPCT"), a subordinate organization of Resident Owned Parks, Inc. ("ROP"), entered into a contract with the HOA providing, in part, that the Park would be transferred from ROPCT to a tax-exempt entity. UCI was not involved in the negotiation, drafting, or acceptance of this contract.

5.      Subsequent to the signing of this contract, the HOA retained UCI to create the aforementioned tax-exempt entity to purchase the Park.

6.      UCI determined that, in its current form as a mutual benefit organization, the HOA would not be able to acquire a tax exemption. UCI recommended creating a new entity rather than restructuring the HOA to conform to IRS requirements.

7.      Subsequent to this advice, the HOA board resolved to create CTO. Accordingly, UCI drafted and filed documents to form CTO as a California non-stock corporation, as well as

**1**

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

preparing documents for submission to IRS, and obtaining a tax exemption as a 501(c)(3) organization.

8.     In July and August 2014, I attended several meetings open to all members of CTO for the purpose of organizing CTO, including accepting the by-laws and electing a Board of Directors for the newly formed organization.

9.     At those meetings, the residents, many of whom held proxies for other residents, made several suggestions to amend the by-laws, including a suggestion that all members of the CTO Board must be residents of the park. The residents proceeded to adopt the by-laws and elect an initial Board of Directors, consisting of: Kelley Hanson, Leon Peters, Bill Palmer, Schellie Udo, Nikki Lawrence, Wendy Cummings, and Jerry Moody. The board proceeded to ratify the actions of the membership in all respects.

10.    As part of the election process, there was an open forum, at which members asked questions of the candidates. At this forum, each of the initial Board of Directors was asked specifically whether they supported the purchase of the park by CTO, and each person on the Board affirmed that they supported the purchase. At various times thereafter, directors were asked to complete tasks affirming that they supported the purchase, such as signing Mobilehome Park Resident Ownership Program ("MPROP") forms supporting a $2 million loan from MPROP to CTO as part of the financing to purchase the Park from ROPCT. A sample form is attached as "Exhibit G."

11.    Before becoming members of the Board, some of the directors objected to CTO purchasing the property. However, during the time they were members of the Board, they stated their support for the purchase. At no time during their terms as directors of CTO did any of the members of the CTO Board advise me or state at any meeting at which I attended that they opposed the sale of the park from ROPCT to CTO. To the contrary, at all times while they were members of the Board, every member of the Board assured me and the general membership that they supported the purchase, and took necessary actions to effectuate the eventual purchase by CTO.

2

12.    At several meetings, when asked, I explained that the primary function of CTO was to be tax-exempt owner of the Park, which would result in a savings to each carriage owner of approximately $700 per year. At every meeting at which this was raised, a majority of residents present expressed a desire for a lower rent as part of CTO ownership. However, there were also residents at each of these meetings who expressed a preference for HOA ownership.

13.    Contrary to the HOA's position that CTO was organized to maintain ROPCT's ownership of the park, CTO was created for the sole purpose of purchasing from ROPCT, which would fully divest ROPCT from ownership. UCI has contested many of ROPCT's claims. This is exemplified by UCI's May 5, 2015 email to Maurice A. Priest, President of ROP and ROPCT. See "Exhibit H."

14.    Disagreements between CTO and ROPCT resulted in an agreement to mediate various claims against ROPCT. The mediation was originally scheduled to take place on February 10, 2016. It has since been canceled. However, both parties intend to participate in mediation on February 18, 2016.

15.    There are two loans currently being processed to finance CTO's purchase of the park from ROPCT. The first loan, from Centennial Mortgage, Inc. ("CMI"), will cover $9 million of the $11 million expected cost of purchase and rehabilitation. This loan is backed by the United States Department of Housing and Urban Development (HUD), pursuant to section 207 of the National Housing Act (12 U.S.C. § 1713).

16.    Contrary to allegations that there is a plot to allow ROPCT's continued ownership of the park, on at least three occasions UCI has contacted Matthew Kane, President of CMI, to ensure that the loan is proceeding and that the loan will be issued to CTO for the purpose of purchasing from ROPCT. At several meetings, Maurice Priest has stated that the purpose of the loan is for CTO to purchase the park from ROPCT.

17.    The second loan, an MPROP loan financed by the California Department of Housing and Community Development, will finance the remaining $2 million of the purchase and rehabilitation costs.

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

18.     It is UCI's intention to represent CTO at the closing of the loans, which will result in CTO ownership of the Park.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of February, 2016.

Robert A. Solomon

4

**RESPONSE OF CTO TO HOA'S REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND ROP (KD. NO. 458).**

# Exhibit "A"

Feb 17 14 09:37p    Asset Management                949-433-5212              p.2

## ASSIGNMENT OF REAL ESTATE SALE AND PURCHASE CONTRACT FOR CAPISTRANO TERRACE

By this Assignment, effective as of _____ Capistrano Terrace Mobilehome Owners Association, Inc. ("Assignor"), assigns to Capistrano Terrace Organization, Inc. ("Assignee") all of the Assignor's rights, obligations, duties, title, and interest in and to the Real Estate Sale and Purchase Contract for Capistrano Terrace with Resident Owned Parks Capistrano Terrace, Inc. ("ROPCT"), dated _____ and any and all amendments thereto ("Agreement")

Date

2-12-14

Assignor

By _____

Name  Rehwer Unfceit

Title  President

## ASSUMPTION OF THE REAL ESTATE SALE AND PURCHASE CONTRACT FOR CAPISTRANO TERRACE

Assignee accepts the foregoing Assignment of the Agreement with all of its terms and conditions. Assignee hereby assumes each and every duty and obligation owing to ROPCT arising out of or in connection with the Agreement commencing as of June 4, 2012. Assignee accepts this Assignment, subject to any defenses or causes of action ROPCT may have against Assignor. This Assignment and Assumption is neither a modification of nor an amendment to the Agreement.

Date

2-12-14

Assignee

By _____

Name  Richard Unfceit

Title  President

By _____

Name  Ruston Calison

Title  Secretary

Feb  17  14  09:37p      K&R Management                          949-493-5213              p.3

## CONSENT TO ASSIGNMENT AND ASSUMPTION OF THE REAL ESTATE SALE AND PURCHASE CONTRACT FOR CAPISTRANO TERRACE

ROPCT consents to the foregoing Assignment of the Agreement by Assignor to Assignee and the foregoing Assumption of such Agreement by Assignee. The Consent shall become effective upon execution hereof by all parties, and no assignment shall be deemed to have occurred between Assignor and Assignee until such execution.

Date:

2/20/2014

ROP Capistrano Terrace, Inc.
Consenting Party

By _____

Name Maurice A. Priest

Title President

# Exhibit "B"

## REAL ESTATE SALE & PURCHASE CONTRACT

### FOR

### CAPISTRANO TERRACE

This contract is entered into this __4 th__ day of June, 2012 at San Juan Capistrano, California between ROP Capistrano Terrace Inc., a subordinate organization of Resident Owned Parks, Inc., a California nonprofit housing corporation, 7420 Greenhaven Drive, Suite 125, Sacramento, California 95831, (hereinafter referred to as "ROPCT"), and the Capistrano Terrace Mobilehome Owners Association, Inc., representing homeowners residing at Capistrano Terrace Mobilehome Estates, 32802 Valle Road, San Juan Capistrano, CA 92675 (hereinafter referred to as "Buyer").

The parties hereto acknowledge that with the full support of the Buyer, and as approved by the United States Bankruptcy Court, Central District of California in Case No. 11-19767-MW, ROPCT is purchasing the subject property. Because of potential delays in the Buyer's approval by the IRS for its nonprofit status, and potential delays in securing financing for the purchase of the park, Buyer, supported and approved ROPCT's purchase of the park, so that Buyer would have adequate time to obtain IRS approval of Buyer's nonprofit status, and give Buyer's authorized agents time to submit an application for an MPROP loan, and other required permanent financing for the Buyer's purchase of the park from ROPCT.

The parties acknowledge that ROPCT has been given by its lenders, up to 36 months to secure permanent financing for Buyer, and to repay ROPCT's current lenders. ROPCT and Buyer therefore acknowledge that Buyer through its authorized agents, must secure approval of a State of California MPROP loan through the State of California Department of Housing and Community Development and other permanent financing in the form of a HUD first loan or other comparable permanent bank loans or tax-exempt bond financing.

The parties further acknowledge, that it is the monthly rental payments from each homeowner residing in the park, that provides the cash flow necessary to pay all loan payments, park operation, management, maintenance and reserve payments.

Therefore, for good and valuable consideration, receipt of which is hereby acknowledged, ROPCT does hereby agree to sell, and Buyer agrees to buy, Capistrano Terrace Mobilehome Estates, for the purchase price of Eight Million Two Hundred Fifty-Thousand Dollars ($8,250,000) the same price paid by ROPCT to the former park owner. on the follows terms and conditions:

1.     ROPCT shall pay all mortgage and loan payments with the monthly space rental payments received from homeowners at Capistrano Terrace. ROPCT and Buyer agree that space rent increases given by ROPCT to park residents shall not exceed 3% per year, and further agree that upon the resale of a home to an approved new tenant, a space rent increase shall not exceed the highest space rent then currently charged at Capistrano Terrace.

2.     ROPCT shall throughout the term of this purchase contract, in addition to making timely payment of the purchase money loans, use the remaining portion of monthly space rents paid by homeowners at Capistrano Terrace, to pay for the proper operation, maintenance, management, and reserve payments to assure that the subject property is well maintained.

3.     ROPCT shall not sell the park to any other investor or entity, but is hereby obligated to sell to Buyer within 3 years, or as soon as the authorized agents of Buyer have secured approval of an MPROP loan from the State of California, and other permanent financing in the form of a HUD first loan, other bank first loan, and/or tax-exempt bond financing.

4.     ROPCT shall throughout the term of this purchase agreement, meet with the elected Board of the Buyer on a periodic basis at the subject property, and confer with them on issues effecting the ownership and operation of the park. The elected Board of the Buyer shall be considered the advisory board to ROP on park issues.

5.     ROPCT shall provide periodic financial reports to the Board of the Buyer regarding the income and expenses of the park, and shall provide on an annual basis a financial summary to homeowners residing in the park.

6.          ROPCT shall not restrict the sales price which may be asked by homeowners at Capistrano Terrace when they sell their personal residence. However, Buyer acknowledges that at the time of the ROPCT purchase of the park 79% of the park residents qualified as low income persons. If Buyer is approved for an MPROP loan, regulations of that loan program will require that certain percentage of prospective buyers meet the income requirements for residents of Capistrano Terrace. Resident Owned Parks, Inc. (ROP), as manager of the subject property, will evaluate prospective buyers according to state law and financing regulations, not for the purpose of restricting a homeowner's resale of their home, but to assure that operation of the park does not violate financing regulations and requirements.

7.          Buyer acknowledges that throughout the term of this contract, buyer must require its member homeowners at the subject property to cooperate with ROPCT by providing, on an annual basis, the necessary personal and confidential income and financial data, so that the ROPCT can seek an annual Welfare Tax Exemption reduction of the park real property taxes, which will enable ROPCT to keep space rents affordable. Buyer acknowledges that the failure of buyer and its members to provide such financial data when requested by ROPCT could possibly result in higher property taxes on the park which will increase space rent charges and pass-through property tax charges to park residents.

8.          The parties further acknowledge that ROPCT is a subordinate organization of Resident Owned Parks, Inc., that both are IRS-approved nonprofit corporations, and that both have the same Board of Directors and Officers.

9.          The parties hereto further acknowledge that Buyer is actively seeking approval as a tax-exempt organization and that its IRS approval as such may be a requirement for MPROP loan approval and for other permanent financing sources. Buyer hereby agrees that any and all expenses to obtain such tax-exempt nonprofit status shall be Buyer's responsibility.

10.        ROPCT acknowledges that space rent increases during the term of its ownership is contractually restricted to not exceed a 3% increase each year.

11.          The parties further acknowledge that at time of transfer of title, various state, local, and federal taxes may become due and payable by virtue of the sale of the subject property by ROPCT to Buyer.  Such taxes may include, but not be limited to transfer taxes, increased property taxes, and other taxes levied on ROPCT by virtue of its relinquishment of ownership of the subject property to Buyer.  In consideration of ROPCT's sale of the subject property to Buyer, and its willingness to waive any and all potential profit which it may have realized on any increase in value of the subject property during its ownership, Buyer hereby agrees that it shall be obligated to pay any and all such taxes and all expenses related to the transaction to transfer title to Buyer, including but not limited legal fees, title and escrow charges, and County transfer taxes, any required inspections, termite and environmental inspections and reports, which result to ROPCT or to Buyer, as a result of the sale of the subject property from ROPCT to Buyer, as set forth herein.

SO AGREED.

Dated: June 4, 2012      ROP CAPISTRANO TERRACE, INC.

By _____
      Maurice A. Priest, President

Dated: June 4, 2012      CAPISTRANO TERRACE MOBILEHOME
                    OWNERS ASSOCIATION, INC.

By _____   By _____
   Rick Unfricht, President           Secretary

4

# Exhibit "C"



# Terrace Talk



A Publication of the Capistrano Terrace Mobilehome Owners Association ~ October 2013

## President's Message



Fellow Soon-to-Be Park Owners:

It has been a year since ROP helped us to start the purchase process of our Park out of Bankruptcy Court. Many thanks to Maury Priest for stepping out on a limb for us in helping us with this purchase while he postponed the payment of his fee until he procures permanent financing. I don't think we could have found any other institution or person who would have done this. We would have not been able to start purchasing this Park without this selfless act. "Thanks, Maury!"

As stated in their recent flyer, ROP has accomplished a number of projects this first year of ownership. One of the hardest was the eviction of a long-time owner for inappropriate behavior while under the influence of alcohol. It was a sad day to see this eviction of one of our tenants, but it provides a very hard lesson about proper conduct in our Park and how we should be treating one another as we live here together.

The UCI Law Clinic has filed our Articles of Incorporation for our new entity: CTO, Inc.: Capistrano Terrace Organization, Incorporated!

The Law Clinic is now in the process of developing Rules and Regulations for our new entity. When they are ready, they will be distributed for all to read so we can meet and discuss them and change or amend them to meet our needs and desires since we will be in charge of our own future.

I hope to see you all at the Annual Meeting on Wednesday, November 6.

May God bless you and your family.

— Rick Unfried

### Annual Meeting and Board Election
**WEDNESDAY, NOVEMBER 6**
**7 P.M., THE CLUBHOUSE**
*More details on page 2*

## October 25, 2013



# HAPPY ANNIVERSARY!

It's been a year already since the long nightmare of the threat of park closure and the protracted failure-to-maintain lawsuit all came to a welcome conclusion. With the help of the contribution by lawsuit plaintiffs toward a down payment, we were able to make a major first step toward a resident-owned purchase of the park and get out from under the oppressive hand of the prior owner. The legal agreement left us with three years to come up with permanent financing and take title to the property under the aegis of the HOA. Your HOA will become a nonprofit corporation after the UCI Law Clinic concludes the IRS application for us. In the meantime, interim owner ROPCT, a nonprofit corporation, is holding title and managing Capistrano Terrace Mobile Home Estates, the actual legal name according to Maury Priest.



This first year under our belts has been one of transition, which has been made smoother and less apparent by the retention of the previous onsite manager, Kelly Ann Trahan, a step we welcomed. For ROPCT, it has been a year of research and evaluation. After years of neglect, reflected in two lost failure-to-maintain lawsuits by the last two owners, ROPCT hired electrical, plumbing, sewer and soil experts to do studies and make recommendations on how to proceed with repairs and replacements. The conclusions have been daunting but not surprising: Capistrano Terrace is an old park and its maintenance and upgrade needs have been back-burnered for years. Proceeding is severely limited by the indebtedness we face in acquiring the park, legal fees from successfully fighting the previous owner's bankruptcy, and the current costs of operating the park. As a result, baby steps are being taken where homeowners, who have faced so many years of park neglect, may have been hoping for more dramatic changes. In fact, when the HOA takes ownership in the next one to two years, we will no doubt inherit many of the existing infrastructure problems.

*(Continued on page 2)*



## Anniversary, continued

In their recent newsletter, ROPCT highlighted many of their accomplishments over the last year and thanked homeowners who have done so much to enhance the park's appearance with upgrades and improvements to their homes. Much of this was done with the enthusiasm of residents who had been putting off the work while the future of our park was in jeopardy, and some was done at the prodding of ROPCT; the result has been nicer-looking mobilehomes and a better overall appearance that will help in the acquisition of the permanent bank loans we will need before our deadline of October 24, 2015.

The park's common areas also have some catching-up to do, and the board was very pleased to learn that one of our priorities — the clubhouse and surrounding area — is being addressed. Over the next two months, the clubhouse will be substantially spruced up, inside and out, and the gopher problem and greenbelt area will be attended to as well.

The cost of repairing or replacing the swimming pool has to be weighed against the uncertainty that the hillside can handle the load of a refilled pool. In the short term, ROPCT feels the uncertainty does not justify the costs, and in the long term, they believe it may be preferable to relocate both the pool and clubhouse down to level one where slope failure is not an issue. That solution is way more expensive and involves home relocations as well, so it is an issue that will probably be dealt with after Capistrano Terrace becomes a true resident-owned park.

While on paper it may seem as though current management has moved us significantly forward, any advancements must be considered against the losses. We no longer have street-cleaning service; the large container dumpster has been removed; and our two skilled, experienced maintenance workers have been replaced with one hard-working but much less-experienced person. On balance, we have a temporary situation that is intended to keep the park afloat while the interim owners and your HOA work together to obtain the mutually sought goal of park ownership by us, the resident homeowners. This vision should be much clearer when we celebrate a second anniversary a year from now.

## La Novia Widening

When Maury Priest of ROP was in town for the board and resident meetings, he met with representatives of Caltrans and the city of San Juan Capistrano to discuss the eventual realignment of La Novia at the I-5 Freeway. This is affected by a development beyond San Juan Meadows above Capistrano Terrace and will eventually take place, but it is likely to still be some years before we see bulldozers below our park.

## November Board Meeting

Board meetings are customarily on the first Monday of the month. Next month, the meeting will be on **Tuesday, November 5, 7 p.m. at the clubhouse**. HOA members are welcome to attend.

## Annual Meeting & Board Election

Wednesday, November 6, 7 p.m., the clubhouse. Jess Lopez and Dave Zimmerle's terms expire in 2014. Dave is retiring, while Jess has consented to run again. Kelly Hanson, space 126, has indicated an interest in running for the board, so there are two nominees for the two positions. Nominations may also be accepted at the meeting.

## Park Complaints

As a followup to our article in the September *Terrace Talk* about communicating with the office, we have been asked to publish this quote from the park's Rules and Regulations #10: "Normal business hours for the park office are posted. Except in an emergency, please do not telephone or contact the park manager after normal business hours. The park office phone is for business and emergency use only. Except for emergencies, all complaints either by you or the park must be in writing and signed by the person making the complaint."

## Pro Services

Do you have a skill that might be helpful to other residents of the park, perhaps as a contractor, handyman, accountant, electrician or plumber? We plan to begin publishing a services directory, so if you'd like to be included, please contact Rick Unfried with your name, space number, contact information such as a telephone number and email address, the nature of the services you offer and your background. Please be brief.

### 2013 Board of Directors

President
Rick Unfried, #12 ........... pudgypups@aol.com
Vice President
Jess Lopez, #106 ............... Jeszsurfz@aol.com
Treasurer
Tina Gregory, #150 .... martinagregory@cox.net
Secretary/Newsletter Editor
Rus Calisch, #26 .... fastgraphics@sbcglobal.net
Directors
Jim Nanzig, #17 ................ jimnanzig@cox.net
Jose Zamarripa, #32 .zamarripa.jose@yahoo.com
Dave Zimmerle, #107..................276-7560

*The board meets at the clubhouse on the first Monday of each month at 7 p.m. However, the next meeting will be Tues., Nov 5. All HOA members are welcome to attend.*

*Terrace Talk is a publication of the Capistrano Terrace Mobilehome Owners Association and is provided exclusively to members. Membership is only $12 per year. Renewals for 2014 will begin in November. Everyone is welcome!*

**YES**, I want to be a member of the Capistrano Terrace Mobilehome Owners Association! I understand there is no obligation, and for only $12 per year, I can support the important business of working toward park ownership. ❏ This is a renewal membership.

Name(s) _____

Space # _____ Date(s) of Birth_____

Phone # _____ Other contact phone # _____

Email address _____ Best time to reach you _____

❏ Please have someone contact me about serving on a committee or helping as a volunteer.
*Attach your check for $12 and drop off at the home of any HOA board member. Thank you!*

# Exhibit "D"



# Terrace Talk

A Publication of the Capistrano Terrace Mobilehome Owners Association ~ December 2013

## President's Message



I pray you are having a joyous Advent season in preparation for the coming of the Christ Child on Christmas morning!

We are preparing to close out 2013 and move into a new year. But before this year ends we have a Christmas-light-decoration contest on Christmas Eve with the three best houses to be awarded DeNaults gift cards in the amount of $15, $25, and $50! So get out there and light up those spaces!

Membership renewal has begun and we have 14 re-registrations already. So give your $12 with the form below to any of our Board members before your membership lapses.

After many meetings in the past without the aid of a sound amplifier, the Board acquired a PA system for use at our meetings so all can hear. Merry Christmas to us!

Some good news about our progress toward nonprofit status. As of October 28, 2013, Capistrano Terrace Organization, Inc., is officially a California corporation. We submitted our articles of incorporation with the state of California and they have recognized us as CTO, Inc.! We are still in the process of obtaining our 501c3 nonprofit status with the IRS. As soon as we find out approximately when this may happen, we will inform everyone at a meeting or in the newsletter.

Also, as of November 1, 2013, Advanced Management is now being billed $687 per month plus utilities for space 139 even though it does not have a home on it. This is per the Plan Term Sheet and the bankruptcy court's order.

It is with a heavy heart I have to inform you that we had the passing of Luis Silva, the eldest son of Jose and Zenith Silva in space 89. Our condolences to the Silva family.

We would like to add a new section to our newsletter that covers birth announcements, accomplishments and other news about our residents. Please contact our newsletter editor, Rus Calisch, at fastgraphics@sbcglobal.net or any of the Board members if you would like to include something in the newsletter.

We can thank our management company for the recent Thanksgiving and Christmas parties held in the clubhouse. Great food was enjoyed by all who attended with lots of lively conversation. Let's hope this carries on so our fellowship can continually grow throughout the year.

May you and your family have a Blessed Christmas and a Happy and Prosperous New Year.
— Rick Unfried

## 'Tis the Season!

Many of our residents in Capistrano Terrace take the holiday season seriously and do a spectacular job of dressing up their homes. Once again this year, we want to acknowledge these efforts with our annual Christmas-decorations contest. Your board members will be out judging your displays on Christmas Eve, and DeNaults gift cards will be awarded for first, second and third in the respective amounts of $50, $25 and $15. Good luck, and thanks to everybody who gets into the holiday-decorating spirit!



*Jess Lopez snapped this photo of some of the Capistrano Terrace residents who attended ROPCT's Christmas party on December 12.*

### FREE TO GOOD HOME!

Contact Rus at fastgraphics@sbcglobal.net if you could use a Netgear wireless router.

---

### 2013 Board of Directors

**President**
Rick Unfried, #12 ........... pudgypups@aol.com

**Vice President**
Jess Lopez, #106 ............... Jeszsurfz@aol.com

**Treasurer**
Tina Gregory, #150 .... martinagregory@cox.net

**Secretary/Newsletter Editor**
Rus Calisch, #26 ... fastgraphics@sbcglobal.net

**Directors**
Jim Nanzig, #17 ................ jimnanzig@cox.net
Jose Zamarripa, #32 . zamarripa.jose@yahoo.com
Dave Zimmerle, #107 .................... 276-7560

*The board meets at the clubhouse on the first Monday of each month at 7 p.m. The next meeting will be Monday, January 6. All HOA members are welcome to attend.*

---

*Terrace Talk is a publication of the Capistrano Terrace Mobilehome Owners Association and is provided to members. Membership is only $12 per year.* **Renewals for 2014 have begun!** *Please re-up now. Everyone is welcome!*

**YES**, I want to be a member of the Capistrano Terrace Mobilehome Owners Association! I understand there is no obligation, and for only $12 per year, I can support the important business of working toward park ownership.  ❏ This is a renewal membership.

Name(s) _____

Space # _____ Date(s) of Birth_____

Phone # _____ Other contact phone # _____

Email address _____ Best time to reach you _____

❏ Please have someone contact me about serving on a committee or helping as a volunteer.

*Attach your check for $12 and drop off at the home of any HOA board member. Thank you!*

# Exhibit "E"





**Terrace Talk**

*A Publication of the Capistrano Terrace Mobilehome Owners Association ~ January 2014*

*Happy New Year* **2014**

TIME TO RENEW!

## President's Message



Happy New Year to everyone! With a new year upon us, the Board has met and voted the 2014 slate of officers, and has begun making plans for the year. There will be no change in the officers, but **Kelley Hanson** has replaced **David Zimmerle** as one of the members at large. Again I would like to thank David for his work over the past three years, and we all welcome Kelley who presided over the Unsecured Creditors Committee through the bankruptcy of Advanced Real Estate. Kelley brings with her a wealth of knowledge and understanding about the park in recent years. Welcome aboard!

There were more lights up on homes this year than the past two years we have had the Christmas-lights contest. The Board would like to thank everyone who made the effort to bring a little Christmas cheer to our park, especially the winners, **Miguel Garces**, space 83 (1st); **Kelly Ann Trahan**, space 79 (2nd); and **Jose Silva**, space 89 (3rd); with an Honorable Mention to space 75. Great job everyone, and we might be raising the prize amount next year, so start thinking about next year's competition!

The clubhouse has been receiving some long-overdue attention with new paint, carpet, flooring and some rearranging of furnishings. Everything has been ordered that is needed, and work has started on painting the outside and inside with attention to the grassy areas behind and next to the clubhouse.

Food distribution with HHWW (Helping Hands World Wide) has already made their first distribution this year and has started passing out the schedule for 2014. If you know of a neighbor who might need a little help with food distribution, it will be on the 2nd, 4th and 5th Wednesdays of every month at the clubhouse. The only questionable dates are in December, the 24th and the 31st. I have asked HHWW Director Sita if she knows if there will be deliveries on these dates, and once that is verified, we shall inform all.

Your Board and the UCI Law Clinic that is helping us apply for our IRS nonprofit status will be meeting soon to receive an update and fill in any information needed to move the application along. It has been a longer process than normal since there has been a turnover of third-year law students over the past two years, but we have been promised that they have everything they need for this year's students, Henry Hymanson and Hagop Boyaci, to complete the process. We would like to thank Carrie Hempel and Bob Solomon who are the students' law professors for all their help in making this happen. — Rick Unfried

## Wednesday, February 12, 7 p.m.

# QUARTERLY MEMBERSHIP MEETING

Come on out and help us celebrate President Lincoln's birthday on **Wednesday, February 12!** We'll be having our Quarterly HOA Membership Meeting at the clubhouse with some newsworthy agenda items. Your Board of Directors is meeting with the UCI Law Clinic and Maury and Diane Priest later this month, so we will have important updates on developments toward our nonprofit status with the IRS, the clinic's proposed bylaws for our new association, and the latest on park improvements and progress toward resident ownership of Capistrano Terrace. AND — we'll be introducing our brand-new P.A. system!

We welcome Lincoln-period costumes and beards, but no top hats, please, so that everyone may see our speakers.

**NOTE: This meeting is for MEMBERS ONLY!** All 2013 memberships are honored through the grace period until March 1, and renewals are encouraged now. Bring your membership card to attend and to vote on association business. 2014 cards will be available at the meeting for new memberships and renewals.

---

### 2014 Board of Directors

*President*
Rick Unfried, #12 ........... pudgypups@aol.com

*Vice President*
Jess Lopez, #106 ............... Jeszsurfz@aol.com

*Treasurer*
Tina Gregory, #150 .... martinagregory@cox.net

*Secretary/Newsletter Editor*
Rus Calisch, #26 .... fastgraphics@sbcglobal.net

*Directors*
Kelley Hanson, #126.... chippewalabs@cox.net
Jim Nanzig, #17 ................ jimnanzig@cox.net
Jose Zamarripa, #32 . zamarripa.jose@yahoo.com

*The board meets at the clubhouse on the first Monday of each month at 7 p.m. The next meeting will be Monday, February 3. All HOA members are welcome to attend.*

*Terrace Talk is a publication of the Capistrano Terrace Mobilehome Owners Association and is provided to all residents until March 1, and then members only. Membership is only $12 per year.* **Renewals for 2014 have begun. Beat the March 1 $5 late fee and re-up now!**

**YES,** I want to be a member of the Capistrano Terrace Mobilehome Owners Association! I understand there is no obligation, and for only $12 per year, I can support the important business of working toward park ownership.    ❑ This is a renewal membership.

Name(s) _____

Space # _____ Date(s) of Birth_____

Phone # _____ Other contact phone # _____

Email address _____ Best time to reach you _____

❑ Please have someone contact me about serving on a committee or helping as a volunteer.
*Attach your check for $12 and drop off at the home of any HOA board member. Thank you!*

 

# Terrace Talk

A Publication of the Capistrano Terrace Mobilehome Owners Association

# Newsletter Input Form

Do you have an announcement or news item that you'd like to share with your neighbors in Capistrano Terrace? Please fill out this form and drop it off with any board member, email to the newsletter editor at fastgraphics@sbcglobal.net, or fax to (949) 493-5213. You must be a member of the HOA.

Your Name _____ Space # _____

Phone # _____ Email Address _____

*Please select from the following:*

❑ Birth               ❑ Death              ❑ Award/Achievement
❑ Engagement          ❑ Anniversary        ❑ Retirement
❑ Wedding             ❑ Moving In          ❑ Quinceañera
❑ Graduation          ❑ Moving Out         ❑ New Home

❑ News item of interest (e.g., dangerous animal such as a rattlesnake or coyote, accident, arrest, etc.)

❑ Other _____

❑ Professional service offered (e.g., contractor, carpenter, electrician, plumber, handyman, house cleaner, accountant, graphic artist, lawyer, therapist, etc.)

Service_____

Your Background _____

_____

State License # if Available _____

Details_____

_____

_____

_____

_____

_____

_____

_____

*I authorize this information to be published in* Terrace Talk *at the discretion of the editor:*

Your Signature _____ Date_____

# Exhibit "F"



# Terrace Talk



RENEW NOW AND BEAT THE MARCH 1st LATE FEE!

TIME TO RENEW!

A Publication of the Capistrano Terrace Mobilehome Owners Association ~ February 2014

## — LAST NEWSLETTER! —

This will be the last newsletter distributed free to all residents. As of March 1, all HOA communications, including newsletters and electronic notices, will go to members only. This is not an exclusive organization! Every household is welcome to join, and the dues are still only $12 per year if you renew by March 1. A late fee of $5 applies to renewals thereafter. Memberships for new residents are always just $12. *Please support your HOA!*

# Recap of HOA Quarterly Meeting, Wed., Feb. 11, 2014

About 42 members and directors were greeted Wednesday by President Rick Unfried with an introduction of the association's new sound system, acquired for only $100 on sale at Costco. The meeting was called to order at 7:10 p.m. Members of the board present were Rick Unfried, Jess Lopez, Tina Gregory, Rus Calisch, Jim Nanzig and Jose Zamarripa. Tina led the group in a Christian prayer. Bottled water and Valentine cookies were available as refreshments.

**Treasurer's Report**. Rick reported that we had $4472.39 in our accounts as of the beginning of the meeting, but many membership renewals were taken in that evening, so the total will go up. Rick also reminded everyone that all 2013 memberships expire February 28, 2014, and that the $12 dues go up to $17 on March 1 because they include a $5 late fee. Those who hadn't renewed were encouraged to do so by the end of the month.

**Minutes**. The minutes of the last HOA meeting, which included our annual election, were published in the November newsletter, and had been approved by the board. Copies of the newsletter were available at the meeting.

**Newsletter Input**. Introduced in the January newsletter was a full-page form that enabled any member of the HOA to submit input regarding community or family news. Extra copies of the form were available at the meeting, and everyone was encouraged to help make the newsletter more "newsworthy" by providing input on the form and returning it to any board member.

**Welcome Wagon**. Rick said that Tammy Childers had agreed to head up a committee that will assemble a card and gift basket to be presented to new residents. The committee would welcome a couple of additional volunteers. Please contact Tammy or any board member if you'd be willing to help.

**PIGS**. Jim Nanzig reported on the Park Improvement and Grounds Service committee and said they had an ongoing Lumber Library that included a variety of excess building materials that were stored at the closed swimming pool. Everyone was welcome to contribute to or draw from this resource. Jim also reminded attendees what a valuable resource the Community Action Partnership (CAP) is, having provided totally free energy-saving services to a number of low-income residents in the park. Those services included a home inspection to check shower heads, water heaters, furnaces, doors, windows, etc., and these inspections have resulted in free water heaters and furnaces to several residents. Their office is in Garden Grove, but Jim said that if several homeowners express interest at one time, CAP officials will come here to the park. It's best to plan ahead because it takes 2-3 months between the inspection and actual installation.

**Food Distribution Program**. Rick said the program continues to grow, and the turnout for the distribution that was held earlier today in the clubhouse included 135 residents. The program is offered on the second, fourth and fifth Wednesdays of each month at noon.

Participants are requested not to place the cartons in the trash bins, but rather to reuse them by bringing them to the next food-distribution day or drop them off by the garage at space #1.

**UCI Law Clinic**. Your board of directors met with members of the clinic here at the clubhouse on Monday, February 10, to meet the fourth set of new law students who are working on our application. This has been a two-step process. The first was obtaining nonprofit status from the state of California for our new entity, which is called Capistrano Terrace Organization, Inc. (CTO), and this has already been accomplished. Taking longer is the more involved process of obtaining IRS 501c3 status. We had mistakenly been under the impression that this application had taken place under the previous team of students, but with the new ones taking over and getting up to speed, we found that there was more work to do. Part of that has been drafting and approving a new set of bylaws for CTO. The fourth draft of those bylaws was approved by the board tonight and copies were available for review at the meeting. Those with email addresses will receive a copy electronically and those who would like a hard copy, which comes to 24 pages, should contact Rick Unfried.

The balance of the IRS application was completed at the board's meeting with the clinic on Monday and should be ready for mailing this week or next. If the membership seeks changes to the bylaws, that can still be accomplished without jeopardizing the application. Processing by the IRS is expected to take around three months. Once CTO's nonprofit status is confirmed, permanent financing for the park can be concluded, although it's already being worked on by Maury Priest with conclusion hopeful by the end of the year.

**IRS Nonprofit Status**. Rick explained that the primary reason we were seeking nonprofit status was that we would save substantially on property taxes. If approved, we will be required to maintain residency of at least 75% low-income homeowners. The last survey that was conducted by ROP in 2008 showed that we qualified with 81%; however, this figure could change, and anytime a home sale takes place in the park after CTO becomes the owner, a new home buyer may or may not have to qualify as low-income, depending on the percentage at the time of the purchase. This is a review that is conducted by the

## Rent Increase

We have been informed by ROPCT that all rents below $900 per month will be increased effective June 1, 2014, by 3%. This is the first hike since the park changed hands in October 2012, and ROPCT will be sending notices to each household subject to the increase explaining the reasons and what their new rent will be. According to a recent notice from the city of San Juan Capistrano, the Consumer Price Index (CPI) is currently 1.1%.


property manager anytime someone applies to live here.

At the request of one of the attendees at the meeting, the following information has been provided by the UCI Law Clinic: Using a median income for Orange County of $84,900 and an average of four persons per household, they calculated low income would be $72,250 per year or less, very low at $45,150 per year or less, and extremely low at $27,100 per year or less. With fewer persons in the household, these numbers drop. With more, the number rises.

**Owner-Occupied Status.** Rick reported that ROPCT had sent notices to all homeowners who currently have renters living in their Capistrano Terrace homes, giving them a total of 67 days to have the renters vacate or risk eviction. Homeowners then may either move back into the homes themselves, sell or leave them vacant; however, they must continue to make payments or face foreclosure. Rick said there were a total of 15 homes currently occupied by renters who are not qualified to do so; Advanced Real Estate Services, as a result of the bankruptcy settlement, still owns a few units that they are allowed to rent until CTO takes over the park.

**Laundry Rooms.** There have been resident complaints about overuse of the laundry rooms by nonresidents. A request has been made to management to post a notice along with the laundry-room hours that states the facilities are for the use of residents only. Also, because the attached restrooms were often abused and required a lot of maintenance, Diane Priest asked Rick to poll the residents on their attitude toward closing the restrooms. Some residents said they definitely made use of the restrooms, particularly when they had plumbing problems at home, and others said they had seen police and postal workers making use of them. A vote was unanimous in favor of keeping the restrooms open, although it was suggested they be closed at night, perhaps following the same hours as the clubhouse. Another idea was to keep them locked at all times and provide a key to any resident who requested it.

**Clubhouse Remodeling.** Rick pointed out that work was running behind because of scheduling problems and material shortages, but it was apparent that a lot of work was underway. He pointed to the new bamboo dance floor for which the material was mostly donated. He also said the one remaining pool table would be relocated to a game room just this side of the library.

**Sewer System.** Rick said that the sewer system had been inspected using a video camera and major repairs would be taking place where necessary. Also, the new annual maintenance on the lateral lines that go into individual homes was at or near completion. Not only were all the lines being cleaned, but also copper sulfate was being added

to discourage tree-root growth. With this new annual maintenance, emergency clog repairs should be much less likely, and if calls placed are the result of flushing improper materials, the homeowner will be charged.

**Speed Humps.** As a result of speeding complaints, speed humps are being installed near spaces 45-46. Rick said that this would be the right time to contact the office if you'd like to suggest other areas for speed humps. Various alternatives were discussed, including speed bumps vs humps, and it was noted that some people don't even slow down for the humps we have now, but going to the other extreme could cause vehicle damage and slow response time for emergency vehicles. Tina said that she was in an accident recently that was caused by someone who was coming out of their driveway at too high a speed, and both she and the driver of their car were moderately injured. Everyone was encouraged to adhere to the 10-mph speed limit and to observe and report speeders to management.

**Spending Limit.** Rick pointed out that there was a $100 spending limit placed on the board, with anything over $100 requiring approval by the HOA membership. This maximum had been in place for years and limited the board's ability to make purchases. As an example, Rick mentioned the new sound system that was affordable only because we had a coupon that brought the Costco price of $150 down to $100, and even at that cost, Rick covered the overage caused by the tax. Rus mentioned that all the costs of printing the color newsletters and membership cards were also being covered by Rick. The board had suggested a new limit of $200, but one of the residents observed that was still low and recommended $249. A vote on this increase will be taken at the next quarterly meeting.

**Appreciation.** Jess Lopez and Jim Vance made a point of thanking others in addition to Rick who've been giving a lot of their time and own resources to the park's business, including Rus Calisch, Jim Nanzig and Tina Gregory, and also to the residents for their attendance and input at meetings and for the improvements they'd made to their homes.

**Park Directory.** A resident asked if we were going to publish a park directory. Rick said that Maury had produced and distributed a form for residents to fill out with the information for the directory along with their approval for the park to publish it, but there had been only about 25 replies, which did not make a directory worthwhile. Jim Vance suggested we try again after the park had reverted to mostly owner-occupied status.

The meeting was adjourned at 8 p.m.

---

### 2014 Board of Directors

**President**
Rick Unfried, #12 ........... pudgypups@aol.com
**Vice President**
Jess Lopez, #106 ........... Jeszsurfz@aol.com
**Treasurer**
Tina Gregory, #150 .... martinagregory@cox.net
**Secretary/Newsletter Editor**
Rus Calisch, #26 .... fastgraphics@sbcglobal.net
**Directors**
Kelley Hanson, #126.... chippewalabs@cox.net
Jim Nanzig, #17 ............... jimnanzig@cox.net
Jose Zamarripa, #32 .zamarripa.jose@yahoo.com
*The board meets at the clubhouse on the first Monday of each month at 7 p.m. The next meeting will be Monday, March 3. All HOA members are welcome to attend.*

*Terrace Talk* is a publication of the Capistrano Terrace Mobilehome Owners Association and is provided to all residents until March 1, and then to members only. Membership is only $12 per year. **Beat the March 1 $5 late fee and renew now!**

**YES,** I want to be a member of the Capistrano Terrace Mobilehome Owners Association! I understand there is no obligation, and for only $12 per year, I can support the important business of working toward park ownership.   ❏ This is a renewal membership.

Name(s) _____

Space # _____ Date(s) of Birth_____

Phone # _____ Other contact phone # _____

Email address _____ Best time to reach you _____

❏ Please have someone contact me about serving on a committee or helping as a volunteer.

*Attach your check for $12 and drop off at the home of any HOA board member. Thank you!*

# Exhibit "G"

P

# ATTACHMENT 5P

# CERTIFICATIONS OF RESIDENT SUPPORT

## CERTIFICATION OF RESIDENT SUPPORT SUMMARY

Park Name:  Capistrano Terrace
Contract No:
Date:  July 23, 2012

| No. | Resident Name(s) | Street Address or Space # | Support | Does Not Support | Declines | Low Income |
|---|---|---|---|---|---|---|
| 1 | Robbins | 1 | X | | | X |
| 2 | Childers | 3 | X | | | X |
| 3 | Dionisio | 4 | X | | | X |
| 4 | Smith | 5 | X | | | X |
| 5 | Gonzalez | 6 | X | | | X |
| 6 | Maasen | 7 | X | | | X |
| 7 | Maslow | 8 | X | | | X |
| 8 | Fabion/Pulido | 9 | X | | | X |
| 9 | Gonzalez | 10 | X | | | X |
| 10 | Bunnell | 11 | X | | | X |
| 11 | Unfried | 12 | X | | | X |
| 12 | Gray/Landgraf | 12A | X | | | X |
| 13 | Moody | 14 | X | | | X |
| 14 | Kelly | 16 | X | | | X |
| 15 | Nanzig | 17 | X | | | X |
| 16 | Bentley/Poggio | 23 | X | | | |
| 17 | Spangler | 24 | X | | | X |
| 18 | Randolph | 25 | X | | | X |
| 19 | Calisch | 26 | X | | | X |
| 20 | Alvarado | 27A | X | | | X |
| 21 | Junio/Medina | 30 | X | | | X |
| 22 | Zamarripa | 32 | X | | | X |
| 23 | King/Akan/Steele | 33 | X | | | X |
| 24 | Knight/Richard | 35 | X | | | X |
| 25 | Zamarripa | 36 | X | | | |
| 26 | Rendon/Zuniga | 37 | X | | | X |
| 27 | Berry/Miller | 38 | X | | | X |
| 28 | Cabrera/Cordano | 39 | X | | | X |
| 29 | Peters | 40 | X | | | X |
| 30 | Santiago | 42 | X | | | X |
| 31 | Esparza/Ortega | 43 | X | | | X |
| 32 | Sims | 44 | X | | | X |
| 33 | Neal/Maikuch | 45 | X | | | X |
| 34 | Mink | 46 | X | | | X |
| 35 | Church | 47 | X | | | X |
| 36 | Torres/Mendoza | 48 | X | | | X |
| 37 | Villalobos | 49 | X | | | X |
| 38 | Spector | 51 | | X | | X |

## CERTIFICATION OF RESIDENT SUPPORT SUMMARY

| No. | Resident Name(s) | Street Address or Space # | Support | Does Not Support | Declines | Low Income |
|---|---|---|---|---|---|---|
| 39 | Stremper | 52 | X | | | X |
| 40 | Fenske | 53 | X | | | X |
| 41 | Garces | 57 | X | | | X |
| 42 | Contreras | 58 | X | | | X |
| 43 | Torney | 59 | X | | | X |
| 44 | Navarro | 60 | X | | | X |
| 45 | Mendoza | 62 | X | | | X |
| 46 | Hernandez | 64 | X | | | X |
| 47 | Baeza | 65 | X | | | X |
| 48 | Smith | 67 | X | | | X |
| 49 | Gallardo | 68 | X | | | X |
| 50 | Granados | 71 | X | | | X |
| 51 | Orr | 72 | X | | | X |
| 52 | Cummings | 73 | X | | | X |
| 53 | Thomson | 75 | X | | | X |
| 54 | Pridgin | 76 | X | | | X |
| 55 | Penkova/Shouse | 78 | X | | | X |
| 56 | Ceja/Diaz | 82 | X | | | X |
| 57 | Bollman | 83 | X | | | X |
| 58 | Thompson | 85 | X | | | X |
| 59 | Everly | 86 | X | | | X |
| 60 | Garcia/Lopez | 87 | X | | | X |
| 61 | Whynaught | 88 | X | | | X |
| 62 | Silva/Guttierez | 89 | X | | | X |
| 63 | Lukaszka | 90 | X | | | X |
| 64 | Blanda | 91 | X | | | X |
| 65 | Sleper/Lawson | 92 | X | | | X |
| 66 | Manning | 93 | X | | | X |
| 67 | Barrera | 94 | X | | | X |
| 68 | Hinman | 95 | X | | | X |
| 69 | Garcia/Lopez | 96 | X | | | X |
| 70 | Alexander | 97 | X | | | X |
| 71 | Mongey/Plesofsky | 98 | X | | | |
| 72 | Marks | 99 | X | | | X |
| 73 | Rice | 100 | X | | | X |
| 74 | Palmer | 103 | X | | | X |
| 75 | Villamil/Calderon | 104 | X | | | X |
| 76 | Lopez | 106 | X | | | X |
| 77 | Zionmerle | 107 | X | | | X |
| 78 | Wilmoth | 111 | X | | | |
| 79 | Cletcher | 112 | X | | | X |
| 80 | Villamil | 113 | X | | | X |

## CERTIFICATION OF RESIDENT SUPPORT SUMMARY

| No. | Resident Name(s) | Street Address or Space # | Support | Does Not Support | Declines | Low Income |
|---|---|---|---|---|---|---|
| 81 | Fiorentino/Garcia | 114 | X | | | |
| 82 | Garcia/Esquiver | 115 | X | | | X |
| 83 | Gilberto | 117 | X | | | X |
| 84 | Garcia | 118 | X | | | X |
| 85 | Parr | 119 | X | | | X |
| 84 | Velasquez | 120 | X | | | X |
| 85 | Dupre | 121 | X | | | X |
| 86 | Zamora | 122 | X | | | X |
| 87 | Vaughan | 123 | X | | | X |
| 88 | Villamil/Cruz | 125 | X | | | X |
| 89 | Hanson | 126 | X | | | X |
| 90 | Gerdner | 127 | X | | | X |
| 91 | Perez/Priego | 128 | X | | | X |
| 92 | Reyes | 130 | X | | | X |
| 93 | Nott | 133 | X | | | X |
| 94 | Gamboa/Valdez | 134 | X | | | X |
| 95 | Bell | 135 | X | | | X |
| 96 | Montes | 136 | X | | | X |
| 97 | Isas | 137 | X | | | X |
| 98 | Condon | 138 | X | | | X |
| 99 | Stafford | 140 | X | | | X |
| 100 | Vance | 141 | X | | | X |
| 101 | Neuman | 143 | X | | | X |
| 102 | Parman | 144 | X | | | X |
| 103 | Macedo | 145 | X | | | X |
| 104 | Pridgin | 146 | X | | | X |
| 105 | Gruin | 147 | X | | | X |
| 106 | Uddo | 148 | X | | | |
| 107 | Hamer | 149 | X | | | X |
| 108 | Gregory | 150 | X | | | X |
| 109 | Nielsen/Smith | 151 | X | | | X |
| 110 | Kudei | 153 | X | | | X |
| 111 | Holloway | 154 | X | | | X |
| 112 | Morgan/Hochstatter | 157 | X | | | X |
| | TOTAL: | | 113 | 1 | 0 | 109 |

Jul 17 '12 03:02p    K&R Management    049-493-5213    p.1

STATE OF CALIFORNIA - BUSINESS, TRANSPORTATION AND HOUSING AGENCY    EDMUND G. BROWN JR., Governor

**DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT**
**DIVISION OF FINANCIAL ASSISTANCE**
Mobilehome Park Resident Ownership Program
1800 Third Street, Suite 450
P. O. Box 952054
Sacramento, CA 94252-2054
www.hcd.ca.gov
(916) 445-9110
FAX (916) 445-0117



## CERTIFICATION OF RESIDENT'S SUPPORT
## FOR RESIDENT-OWNED OR NON-PROFIT OWNED COMMUNITY

<u>This form is to be used when converting to resident organization ownership or non-profit ownership.</u>

Certification of Resident's Support for Purchase of Park By

# CAPISTRANO TERRACE MOBILEHOME OWNERS ASSOCIATION, INC.

<u>Instructions for completing this form:</u>  Section A must be completed by the entity that is purchasing or facilitating the purchase of the mobile home community. This must be done prior to each household completing Section B.

<u>Section A (to be completed by purchasing entity)</u>

Name of Mobilehome Park:  Capistrano Terrace Mobilehome Park

Address of Lot or Space #:  _____1_____  In Capistrano Terrace MHP located at 32802 Valle Road, San Juan Capistrano, CA 92675

Current monthly space rent: $687 Average  New estimated monthly space rent: $ 687 Average (annual increase not more than 3%)

Date of Estimate: July 16, 2012  Completed by: HOA Agent, Maurice A. Priest of Resident Owned Parks, Inc. Ph. 916-399-4993

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>Section B (to be completed by household)</u>

It is the intent of the entity named above to purchase the mobilehome park in order to preserve the park as a long-term source of affordable housing. No physical displacement of the existing residents is anticipated as a result of the purchase. If any displacement does occur, mitigation would be required by State law. In the event the purchasing entity receives Mobilehome Park Resident Ownership Program funds, the Department of Housing and Community Development will require that the low-income households' rents remain affordable. If the purchaser is a non-profit entity, the Department will require resident participation by either having resident representation on their Board or by establishment of a permanent Resident Advisory Board.

The information provided above is a comparison of your current monthly space rent and the estimated new monthly space rent. Any changes to rent would take effect after the purchase closes escrow. It is very possible that there will not be an increase to your space rent. You should have received a more comprehensive description of the project's impact prior to receiving this form. Please complete the survey below and sign and date the form.

PLEASE CHECK <u>ONE</u> BOX FOR YOUR HOUSEHOLD:

[X]    Yes, I support acquisition of the park.
[ ]    No, I do not support the acquisition of the park.
[ ]    I decline to state my opinion at this time.

I understand that this form is only an indication of support or non-support for the park conversion.

_Sharon Robbins_    _7/18/12_    _____    _____
(Signature)         (Date)              (Signature)          (Date)

Resident Support Certification for resident organizations or non-profit
Rev. June 2011

# Exhibit "H"



From: **Jordan Tessier** [jtessier.law@law.edu.edu] ✉
Subject: ROPCT Reimbursement
Date: May 5, 2015 at 3:05 PM
To: Maurice A. Priest [mp@law.net]
Cc: Mark Stamper [stamper.law@law.edu.edu], Carrie Hempel [CHempel@law.edu.edu], Debi Gloria [DGLORIA@law.edu.edu],
Kelly Galligan [gal.galligan@law.edu.edu], Robert Solomon [robertsolomon@law.edu.edu]

Dear Maury,

We are e-mailing you to continue our discussion regarding the reimbursement of ROPCT for funds used to obtain financing for CTO and to rehabilitate Capistrano Terrace Mobilehome Park.

We hope that we can resolve our difference in opinion. We do not think presenting this issue to the bankruptcy court would be beneficial for either party. However, in the event we cannot resolve this issue and you decide to proceed with litigation, we strongly believe that the facts and law surrounding the issue greatly weigh in our client's favor. In an effort to open further discussion and so that you are not surprised by our arguments, we have included our position, supported by case law and statutory law, in this e-mail. You previously mentioned that you have hired counsel and that they have provided an opinion on this issue. If you provide us your attorney's contact information, we can send this e-mail to your attorney as well. Also, we would like to review any legal opinion you or your attorney may have on the issue. Other than brief discussions we have had in person, we have not received any written legal memorandum outlining ROP's position concerning these funds. If you would provide authority for ROP's position, it would help us understand ROP's claims and move toward resolution.

As you know, any court deciding upon this issue will first look to the contracts that govern the relationship between ROP, ROPCT and CTO. The disputed funds, which ROPCT and ROP have characterized as "any fees and costs advanced" for the CMI loan and the MPROP loan, would be controlled by the following contracts: "Resident Owned Parks, Inc. Contract for Services," "Real Estate & Purchase Contract for Capistrano Terrace," and "Resolution of Capistrano Terrace Organization, Inc. (CTO) To Reimburse ROP For Rehab Expenses Required By Centennial Mortgage, Inc. Loan for CTO." (All of these are attached to this e-mail) None of these contracts include language that requires CTO to reimburse ROPCT for fees and costs advanced by ROPCT. "The Real Estate & Purchase Contract for Capistrano Terrace" states that monthly rental payments "provide the cash flow necessary to pay all loan payments, park operation, management, maintenance and reserve payments" (Page 2). Therefore, income generated by rental payments should only have been used for these expenses and any excess income should have been deposited into a reserve account. Lastly, the only compensation ROP is entitled to is clearly stated in the service contract. In "Resident Owned Parks, Inc. Contract for Services," ROP is only entitled to a fee equal to 3.5% of the purchase price of the park. The service contract does not make any references to mandatory reimbursements to ROP or ROPCT. However, the service contract does state that ROP is CTO's non-profit agent, which brings about another issue.

Under California case law, an agent (ROP) has a fiduciary obligation to act in interest of the principal (CTO) as a matter of law. (Mendoza v. Rast Produce Co., Inc., 140 Cal.App.4th 1395 at 1405; Brown v. Wells Fargo Bank, NA, 168 Cal.App.4th 938 at 960). Furthermore, California Civil Code 2322 prohibits any agent from violating a duty to which a trustee is subject to under California law. In addition, the obligations of an agent are the same as those posed on a trustee. Finally, in the spirit of fairness, it is a general rule that courts will treat the relation of principal and agent in the same manner and with nearly the same strictness as that of trustee and beneficiary. (Haurat v. Superior Court for Los Angeles County, 241 Cal.App.2d 330 at 334; Webb v. Saunders, 89 Cal.App.2d 732 at 735). Given that ROP is contracted as CTO's agent, ROP has a fiduciary duty to act in CTO's interest. Although you have argued that the level of loyalty does not rise to the level imposed on a trustee, California case law indicates the contrary. It is our opinion that seeking reimbursement for expenses paid for with rental income, which is income that could have been deposited into a reserve account, violates the fiduciary duty imposed on agents. We strongly believe it is improper for ROPCT to be reimbursed for expenses paid for with income generated by monthly rental payments.

We also believe it was improper for ROP and CTMHOA to enter into a contract without CTMHOA receiving independent legal advice. Jim Hinds represented CTMHOA when CTMHOA signed "The Real Estate & Purchase Contract for Capistrano Terrace." Therefore, ROP should have ensured that CTMHOA had the opportunity to seek Hinds' legal advice before CTMHOA signed the contract. Ultimately, the contract was signed without CTMHOA receiving independent legal advice. Although evidence that CTMHOA did not receive independent advice will not be indispensable in a case involving fiduciary relationships, the court will most definitely consider it when deciding if there was a breach of a fiduciary duty (Helbing v. Helbing, 89 Cal.App.2d 224 at 229).

Furthermore, we have some additional questions that we would like to resolve. In the regularly prepared Profit and Loss documents, a "Management Fee" expense is assessed in addition to "Payroll Expenses." It seems as if the wages and benefits of management staff should be included in the Management Fee. During our meeting on April 30, you stated that ROP set the Management Fee in accordance with the industry standard of $30 per month per unit. However, together the Management Fee and Payroll Expenses amount to an approximately $60 per month fee. We need clarification on what the Management Fee and Payroll Expenses cover, and what services are provided from them.

Finally, we have not received sufficient documentation detailing the $77,349.09 that must be reimbursed to the Seller to repay homeowner loans. We do not foresee any opposition to that reimbursement, but before we can advise the CTO Board to sign a resolution regarding those funds, we first need you to provide the relevant documents explaining exactly what this amount entails and how it is to be distributed. We cannot recommend payment of a lump sum without a breakdown of specific amounts paid to identified payees.

Thank you for giving us the time to respond to your position. We encourage you to contact us to discuss these pending issues.


UCI Law Clinic




ROP_Contract_for_Serv
ices copy



CTO Reso to Reimbuse
ROP for Re...enses copy



Capistrano copy

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

UC Irvine School of Law, 401 East Peltason, Suite 1000, Irvine, CA 92697

A true and correct copy of the foregoing document entitled (*specify*): RESPONSE OF CAPISTRANO TERRACE ORGANIZATION TO HOMEOWNERS ASSOCIATIONS' REQUEST TO RETAIN LIMITED JURISDICTION OVER DISPUTES BETWEEN RESIDENTS AND HOA AND RESIDENT OWNED PARKS (KD.NO. 458).

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _02/01/2016_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _02/01/2016_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 02/01/2016 | VIKI K. RODRIGUEZ | |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**[ X ]**   By U.S. Mail to:

Capistrano Terrace
LTD.
15320 Barranca
Parkway, Suite 100
Irvine, CA 92618

Capistrano Terrace
LTD.
Debtor and Debtor-in-
Possession
23792 Rockfield Blvd.,
Suite 100
Lake Forest, CA 92630

Advanced Real Estate
Services, Inc.
Lisa Darling-Alderton
Woolls & Peer
One Wilshire Blvd.,
22nd Floor
Los Angeles, CA 90017

Ruston Calisch
32802 Valle Road #26
San Juan Capistrano,
CA 92675

Rick Unfried
32802 Valle Road #13
San Juan Capistrano,
CA 92675

Kristine Thagard, Esq.
Marshack Hays LLP
870 Roosevelt Avenue
Irvine, CA 92620

Caroline Djang
Rutan & Tucker, LLP
611 Anton Blvd 14th Fl
Costa Mesa, CA 92626

Michael J. Hauser
Ofc US Trustee
411 W 4th St # 7160
Santa Ana, CA 92701

D. Edward Hays
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

James Andrew Hinds
Hinds & Shankman, LLP
21257 Hawthorne Blvd
Fl 2
Torrance, CA 90503

Hye Jin Jang
Hinds & Shankman, LLP
21257 Hawthorne Blvd
Fl 2
Torrance, CA 90503

Charles Liu
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

Richard A. Marshack
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

Elmer D. Martin
P O Box 4670
Diamond Bar, CA 91765

Marisa Matsumura
601 E 2nd St Apt 421
Los Angeles, CA 90012

Scott H. Olson
Vedder Price PC
275 Battery St Ste 2464
San Francisco, CA
94111

Paul Shankman
Hinds & Shankman, LLP
21257 Hawthorne Blvd
Fl 2
Torrance, CA 90503

Kristine A. Thagard
Marshack Hays LLP
870 Roosevelt
Irvine, CA 92620

Lisa Torres
Gates, O'Doherty,
Gonter & Guy, LLP
15373 Innovation Dr
Ste 170
San Diego, CA 92128

United States Trustee
411 W 4th Street
Santa Ana, CA 92701

**[ X ]**   By Personal Delivery to:

Clerk to the Honorable Mark S. Wallace
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 6135 / Courtroom 6C
Santa Ana, CA 92701-4593